IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ALSON ALSTON | : | CIVIL ACTION |
| | : | |
| _____ | : | NO. 13-1855 |
| | : | |
| ALSON ALSTON, | : | |
|       Appellant | : | |
| | : | |
|     v. | : | (BANKRUPTCY NO. 12-15871) |
| | : | |
| ROBERTA A. DEANGELIS, | : | |
|       Appellee | : | |

<u>MEMORANDUM OPINION</u>

Savage, J.                                                              November 27, 2013

      In this bankruptcy appeal, the *pro se* appellant-debtor, Alson Alston ("Alston"),
challenges the Bankruptcy Court's order dismissing his Chapter 11 case for cause.  The
Bankruptcy Court dismissed Alston's case under 11 U.S.C. § 1112(b)(1) and 4(A), (B),
(D), (E), and (F) based on: (1) the pendency of the case for over eight months without
the formation of a potentially confirmable Chapter 11 plan; (2) Alston's failure to propose
a potentially confirmable Chapter 11 plan after having been given time to cure defects
that had been identified in his initial plan; (3) his failure to develop an approvable
disclosure statement that complied with 11 U.S.C. § 1125; (4) the lack of adequate
income to fund a plan of reorganization; (5) his payments to his former attorney in
contravention of both the Bankruptcy Court's order appointing counsel and 11 U.S.C.
§ 331; and (6) his failure to comply with 11 U.S.C. § 364(b) by obtaining credit outside
the ordinary course of business.[1]  The Bankruptcy Court further concluded that Alston,

---

[1] *See* Order, Bankr. Docket, No. 12-15871 (Doc. No. 186) (Feb. 25, 2013) (R. 2) (hereinafter
"February 25 Order").  The Order was entered on February 26, 2013.

who did not appear at the hearing on the United States Trustee's ("UST") motion to dismiss his case, did not satisfy his burden to establish "unusual circumstances" under 11 U.S.C. § 1112(b)(2). It also entered judgment against Alston and in favor of the UST in the amount of $1,300 for unpaid fees owed to the UST pursuant to 28 U.S.C. § 1930(a)(6).[2]

We conclude the Bankruptcy Court did not make an error of law, did not clearly err in its findings of fact and did not abuse its discretion in dismissing rather than converting the case. Therefore, we shall affirm the Bankruptcy Court's February 25 Order dismissing Alston's Chapter 11 case for cause.[3]

### Procedural History and Factual Background

On June 18, 2012, Alston, the owner of nine residential and commercial rental properties in Philadelphia, filed a voluntary Chapter 13 petition in the Bankruptcy Court for the Eastern District of Pennsylvania.[4] In his schedules, he listed as assets nine real properties with a value of $1.7 million and personal property worth $38,000.[5] His liabilities included secured debt of $2.9 million, consisting of mortgages, federal and local tax liens, utility liens and unsecured priority debt of $145,000, arising from outstanding state and local taxes and student loans.[6] He also had $113,543 in

---

[2] See id., Bankr. Docket (Doc. No. 186) (Feb. 25, 2013) (R. 2).

[3] Although we affirm the decision dismissing Alston's case, we vacate the judgment for $1,300 and remand for a determination of the amount of fees, if any, due to the UST.

[4] Chapter 13 Voluntary Petition, Bankr. Docket (Doc. No. 1) (R. 80); Schedule A, Bankr. Docket (Doc. No. 18) (R. 83).

[5] Schedules A and B, Bankr. Docket (Doc. No. 18) (R. 83).

[6] Schedules D and E, Bankr. Docket (Doc. No. 18) (R. 83).

unsecured non-priority debt.[7]  Alston reported he had monthly income of $11,917, of which $9,890 came from rents.[8]  His monthly expenses were $30,046, creating a monthly deficit of $18,129.[9]

About a month later, on July 24, 2012, Alston filed a notice of conversion, seeking to convert his case from Chapter 13 to Chapter 11.[10]  On August 21, 2012, the Bankruptcy Court held a hearing to consider the notice, which it treated as a motion to convert.  Despite its skepticism that Alston had the ability to present a confirmable Chapter 11 plan,[11] the Bankruptcy Court concluded that the bankruptcy estate could "be amenable to some type of restructuring in a Chapter 11 case" because Alston had assets and revenue streaming in from some of his properties and it was possible that his creditors would be willing to let him restructure.[12]  The next day, the Bankruptcy Court entered an order converting Alston's case to Chapter 11, and ordering Alston to file a disclosure statement and proposed plan by November 20, 2012.[13]

---

[7] Schedule F, Bankr. Docket (Doc. No. 18) (R. 83).

[8] Schedule I, Bankr. Docket (Doc. No. 18) (R. 83).

[9] Schedule J, Bankr. Docket (Doc. No. 18) (R. 83).

[10] *See* Bankr. Docket (Doc. No. 23) (R. 7).

[11] The Bankruptcy Court's doubts arose from its observation that (1) Alston's monthly expenses exceeded his monthly income by some $18,000, *see* Hr'g Tr. at 4:12-16 (Aug. 21, 2012) (R. 72); Schedule J, Bankr. Docket (Doc. No. 18) (R. 83) (Alston generated $11,917 in monthly income with $30,046 in monthly expenses), and (2) Alston's Schedule A disclosed "a number of pieces of real estate . . . and virtually every one of them ha[d] mortgages or liens on them that exceed[ed] the value of the property." Hr'g Tr. at 4:18-20 (Aug. 21, 2012) (R. 72).

[12] Hr'g Tr. at 19:16-22 (Aug. 21, 2012) (R. 72).

[13] Order, Bankr. Docket (Doc. No. 48) (Aug. 22, 2012) (R. 16).

After Alston's case was converted to Chapter 11, three of his secured creditors moved for relief from the automatic stay.[14]   On August 31, 2012, Citibank, N.A. ("Citibank") moved for relief regarding Alston's property located at 2836-38 West Girard Avenue, claiming that Alston had not made mortgage payments since April of 2008 and that he owed post-petition mortgage payments totaling nearly $6,000.[15]   Alston opposed the motion, stating that, pursuant to his Chapter 13 plan, he made a payment of $359 to the Chapter 13 trustee, and that he had an insurance policy covering the property.  He did not challenge Citibank's claim that he failed to make mortgage payments during the prior four years.[16]

Alston did not attend the hearing on Citibank's motion.  His attorney argued that Citibank's interest was adequately protected because Alston had insurance on the property and he was maintaining the value of the property.[17]   The Bankruptcy Court rejected these arguments and granted Citibank relief.[18]

On October 19, 2012, Bayview Loan Servicing, LLC ("Bayview") also moved for relief concerning two properties.  With regard to 2834 West Girard Avenue, Bayview alleged that Alston made no mortgage payments since June of 2009 and owed post-

---

[14] Section 362(a) of the Bankruptcy Code puts in place an automatic stay of creditor process against a debtor who files a bankruptcy case, thus barring most judicial proceedings and collection actions against the debtor and the debtor's estate.  11 U.S.C. § 362(a); 21 Am. Jur. Proof of Facts, 3d 769 (1993).

[15] Citibank Mot. for Relief at 2, Bankr. Docket (Doc. No. 57) (R. 18).

[16] Objection to Mot. of Citibank for Relief from Automatic Stay at 1-2, Bankr. Docket (Doc. No. 63) (R. 22).

[17] Hr'g Tr. at 6:2-10 (Oct. 10, 2012) (R. 73).

[18] Id. at 11:2-14; Order Granting Citibank Mot. for Relief, Bankr. Docket (Doc. No. 72) (Oct. 17, 2012) (R. 25).

petition mortgage payments of over $5,000.[19]   Concerning the property at 3117-3127 Master Street, Bayview claimed that Alston had not made mortgage payments since March of 2009 and owed four months' worth of post-petition payments totaling over $14,000.[20]

Opposing Bayview's motions, Alston argued that his Chapter 11 plan would provide for payments in the future, he had insurance coverage for the properties, he was adequately maintaining the physical condition of the properties, and the value of the properties had not declined since he filed for bankruptcy.[21]   Alston also argued that he would be substantially prejudiced because challenging Bayview's motions "caused him to expend his limited and precious funds thereby depleting the value of the estate."[22]

Alston was not present at the hearing on Bayview's motions.   His attorney conceded that notwithstanding two payments that Alston made to Bayview on December 27, 2012 and January 8, 2013, there had been a post-petition default with regard to both properties.[23]   The Bankruptcy Court granted Bayview relief from the automatic stay on both properties.[24]

---

[19] Bayview Mot. for Relief at 2, Bankr. Docket (Doc. No. 79) (R. 27).

[20] Bayview Mot. for Relief at 2, Bankr. Docket (Doc. No. 77) (R. 26).

[21] *See, e.g.*, Objection to Mot. for Relief from Stay of Bayview at 2-4, Bankr. Docket (Doc. No. 100) (R. 37).

[22] *Id.* at 4.

[23] Hr'g Tr. at 4:21-25; 26:11-24 (R. 75) (Jan. 9, 2013).

[24] Orders Granting Bayview Mots. for Relief, Bankr. Docket (Doc. Nos. 156, 157) (Jan. 10, 2013) (R. 62, 63).

Household Finance Consumer Discount Company ("Household Finance") moved for relief pertaining to Alston's property at 2825 West Girard Avenue on December 28, 2012.  Household Finance claimed that Alston had failed to make mortgage payments of $995 per month since January of 2010 and owed post-petition mortgage payments for six months.[25]  At the February 6, 2013 hearing on the motion, Household Finance's counsel disclosed that on the day before the hearing, Alston made a $2,100 mortgage payment to Household Finance.  Prior to that payment, Alston had made two post-petition payments totaling $864 in November and December of 2012.[26]

Alston opposed the motion, stating only that it should not be granted until a hearing was held on his November disclosure statement and proposed plan.[27]  The Bankruptcy Court granted Household Finance's motion for relief.[28]

On November 9, 2012, before Household Finance moved for relief, the UST filed a motion to convert or dismiss the case for cause pursuant to 11 U.S.C. § 1112(b)(1).  The UST alleged that Alston had failed to file timely monthly operating reports; failed to satisfy his post-petition financial obligations, including fees owed to the UST and post-petition mortgage payments owed to his secured creditors; failed to open and use a debtor-in-possession bank account; and failed to comply with the Bankruptcy Code and U.S. Trustee Guidelines.  The UST claimed that Alston's failures showed that he was unable to present a plan of reorganization and there was a continuing loss to or

[25] Household Finance Mot. for Relief at 1-2, Bankr. Docket (Doc. No. 138) (R. 54); Hr'g Tr. at 5:14-16 (Feb. 6, 2013) (R. 76).

[26] See Hr'g Tr. at 4:25-5:1-13 (Feb. 6, 2013) (R. 76).

[27] Objection to Mot. of Household Finance for Relief at 1-2, Bankr. Docket (Doc. No. 162) (R. 65).

[28] Order Granting Household Finance Mot. for Relief, Bankr. Docket (Doc. No. 175) (Feb. 6, 2013) (R. 68).  The Order was entered on February 8, 2013.

diminution of the assets of the bankruptcy estate with no reasonable likelihood of rehabilitation.[29]

A couple of weeks after the UST filed her motion to dismiss or convert, Alston filed an initial Chapter 11 plan and disclosure statement on November 30, 2012.[30]  The plan proposed to modify each of Alston's secured mortgages by reducing the principal loan balances to the current market value of the properties and reducing the interest rate on each mortgage to 3.5 percent.[31]   Alston proposed to make interest-only payments on his secured mortgages for six months, to pay his student loan debt in full and to retain each of his properties.[32]  The proposed plan did not provide for payments of priority tax claims, or the secured and unsecured claims of various utility companies.[33]

On December 13, 2012, nearly six months into his bankruptcy case, Alston filed a motion seeking to use the cash collateral of his secured creditors.[34]  Before filing the motion, Alston had been collecting and using rents from his properties to pay his living expenses, to pay administrative expenses associated with his bankruptcy case, and to maintain his properties.[35]  On January 9, 2013, the Bankruptcy Court held a hearing on

---

[29] UST Motion to Dismiss or Convert to Chapter 7 at 1-2, Bankr. Docket (Doc. No. 93) (R. 33).

[30] Bankr. Docket (Doc. No. 122) (R. 47).  The Bankruptcy Court had ordered Alston to file the plan on November 20, 2012.  At his request, the Bankruptcy Court granted him additional time to file a confirmable Chapter 11 plan.  *See* Order Granting Mot. to Extend Time to File Plan of Reorganization, Bankr. Docket (Doc. No. 116) (R. 46).

[31] Disclosure Statement at 2-3, 11-12, Bankr. Docket (Doc. No. 122) (R. 47).

[32] *Id.* at 12.

[33] *Id*; Schedule F, Bankr. Docket (Doc. No. 18) (R. 83).

[34] *See* Mot. to Use Cash Collateral, Bankr. Docket (Doc. No. 127) (R. 51).

[35] *Id.* at 2-3.

the motion to use cash collateral, the UST's motion to dismiss and Alston's motion to approve his November 30 disclosure statement.  The Bankruptcy Court stated that it was not inclined to grant Alston the use of his secured creditors' cash collateral.[36]  Its reluctance was based on the fact that Alston's motion did not include a budget detailing how he would use the rent generated from each of his nine properties, lacked information on the manner in which the properties generated income, and the motion did not state how Alston's creditors were adequately protected.  The Bankruptcy Court stated that because Alston did not appear at the hearing, it had no evidence as to how Alston intended to use the cash collateral.[37]

The Bankruptcy Court did not rule on the motions.  It continued the hearing to give Alston additional time to propose a confirmable plan.[38]

On February 19, 2013, the night before the hearing on the UST's motion to dismiss, Alston filed an amended disclosure statement and proposed plan.[39]  As did the November plan, the proposed plan and disclosure statement did not provide for payment of Alston's state and local tax claims.  Alston did not include details on how he planned to sell his property located at 3029-31 West Glenwood Avenue, the proceeds of which he claimed would be used to pay pre-petition arrears.  The disclosure statement represented that Alston operated several businesses; but, it did not disclose the nature

---

[36] Hr'g Tr. at 9:3-5 (Jan. 9, 2013) (R. 75).

[37] *Id.* at 7:7-24, 9:12-14.

[38] *Id.* at 13:3-11; 24:15-25-25:1-5.

[39] *See* Am. Disclosure Statement, Bankr. Docket (Doc. No. 178) (R. 70).

of each business, how much revenue, if any, Alston generated from them, or whether he would continue to operate the businesses.[40]

By order dated February 25, 2013, the Bankruptcy Court granted the motion to dismiss, explaining its reasons in a footnote.[41]   The Bankruptcy Court concluded that the UST had met her burden of establishing cause for dismissal and that Alston had not met his burden of establishing "unusual circumstances" under 11 U.S.C. § 1112(b)(2).[42]

Alston timely appealed to this Court on March 7, 2013.[43]   After the Bankruptcy Court denied his request for a stay on April 22, 2013,[44] Alston moved for a stay in this Court on May 30, 2013.

Alston offers a number of reasons why the Bankruptcy Court abused its discretion in dismissing his Chapter 11 case.   He argues that the Bankruptcy Court improperly excluded an affidavit, filed the night before the hearing, which would have shown that he could present a confirmable plan; the February 25 Order relied on erroneous facts; the UST did not meet her burden to establish cause for dismissal; the UST's motion was moot; and her actions prejudiced the proceedings.

## Analysis

Absent unusual circumstances, the Bankruptcy Court shall convert or dismiss a case for cause, taking into consideration the "best interests of the creditors and the

---

[40] *See* Am. Disclosure Statement at 6-7, Ex. 2; Ex. 1 (Am. Plan of Reorganization) at 12. (Doc. No. 178) (R. 70).

[41] Bankr. Docket (Doc. No. 186) (R. 2).

[42] *Id.*

[43] Bankr. Docket (Doc. No. 196) (R. 1).

[44] Order, Bankr. Docket (Doc. No. 210).

estate."  11 U.S.C. § 1112(b)(1); *In re Am. Capital Equip., LLC*, 688 F.3d 145, 161 (3d Cir. 2012).  Once the Bankruptcy Court finds cause, the burden shifts to the opposing party to demonstrate "unusual circumstances" establishing that dismissal or conversion would not be in the best interests of the estate and the creditors.   11 U.S.C. § 1112(b)(2); *In re Grasso*, 497 B.R. 448, 455 (Bankr. E.D. Pa. 2013).

The Bankruptcy Court has considerable discretion in determining whether to dismiss or convert a case to Chapter 7.  *In re SGL Carbon Corp.*, 200 F.3d 154, 159 (3d Cir. 1999).  Here, the Bankruptcy Court found various factors supporting cause to dismiss Alston's Chapter 11 case.  Its decision to dismiss a case pursuant to 11 U.S.C. § 1112(b)(1) is reviewed for abuse of discretion.  *See id.*

The Bankruptcy Court's factual findings will not be disturbed unless they are clearly erroneous.  *In re IT Group., Inc.*, 448 F.3d 661, 667 (3d Cir. 2006); Fed. R. Bankr. P. 8013.  A factual finding is clearly erroneous if the district court is firmly convinced, based on all the evidence, that the Bankruptcy Court made a mistake. *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 201 (3d Cir. 2005); Fed. R. Bankr. P. 8013 advisory committee's note (according equal weight to a bankruptcy judge's findings as that given to the findings of a district court judge under Fed. R. Civ. P. 52(a)).  The district court may not engage in independent fact finding.  *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 210 n.19 (3d Cir. 1995) (citing 28 U.S.C. § 158(a)).

In this case, the Bankruptcy Court found cause to dismiss under sections 1112(b)(1), 4(A), (B), (D), (E) and (F).  Section 1112 does not explicitly define "cause". Subsection (b)(4) sets out a non-exclusive list of grounds that constitute cause for purposes of either converting or dismissing a Chapter 11 case, "whichever is in the best

interests of creditors and the estate." 11 U.S.C. § 1112(b)(1). We shall address each ground relied upon by the Bankruptcy Court.

*Cause Under § 1112(b)(1)*

The absence of a confirmable plan constitutes cause for dismissal under section 1112(b)(1). *See, e.g., In re Am. Capital Equip.*, 688 F.3d at 162 n.10; *DCNC N. Carolina I, LLC v. Wachovia Bank N.A.,* No. 09-3775, 2009 WL 3209728, at *5 (E.D. Pa. Oct. 5, 2009) (inability to effectuate a plan is a basis for dismissal under section 1112(b)); *In re Nardi*, No. 91-4864, 1991 WL 255681, at *3 (E.D. Pa. Nov. 25, 1991). Despite having been given ample time to do so and having been informed of the defects in his initial proposed plan, Alston was unable to present a confirmable Chapter 11 plan. His failure to propose a confirmable plan provided cause to dismiss his case.

To be confirmable, a plan must comply with Bankruptcy Code section 1129. *In re Dupell*, No. 99-10561, 2000 WL 192972, at *3 (Bankr. E.D. Pa. Feb. 15, 2000). Alston's proposed plan did not comply with at least two provisions of section 1129. The proposed plan made no provision for the payment of state and local income tax claims, which, pursuant to section 1129(a)(9)(D), must be fully satisfied within five years. Alston summarily claimed he would "avoid" state and local claims for income and business taxes against him totaling $100,000.[45] The Bankruptcy Court did not err in finding and concluding that Alston did not "provide for treatment of his priority debts [as] mandated by the Bankruptcy Code."[46]

---

[45] *See* Am. Disclosure Statement, Ex. 2 at 3, Bankr. Docket (Doc. No. 178) (R. 70); Schedule E, Bankr. Docket (Doc. No. 18) (R. 83).

[46] February 25 Order, Bankr. Docket, (Doc. No. 186) (R. 2).

A plan that is likely to be followed by liquidation or more reorganization does not satisfy section 1129(a)(11).  *See In re Am. Capital Equip.*, 688 F.3d at 155-56.  Alston had insufficient income to finance his proposed plan as required by section 1129(a)(11).  His estate was operating at a significant deficit while continuing to sustain losses.  Not only did his monthly expenses exceed his income by over $18,000, but six months into his bankruptcy case, the estate was operating at a deficit of over $31,000.[47]  Hence, the Bankruptcy Court properly found that Alston had insufficient income to fund a plan.

As the Bankruptcy Court found, Alston was unable to submit an adequate disclosure statement that satisfied section 1125.  The amended disclosure statement did not include enough information to allow a reasonable investor like Alston's creditors to make an informed decision about Alston's amended Chapter 11 plan.  11 U.S.C. § 1125(a)(1).  The amended disclosure statement represented that Alston operated several unidentified businesses out of his various properties.  It did not reveal the nature of those businesses; whether he would continue to operate them; and what income, if any, he received from operating those businesses.[48]  Alston also claimed that he intended to pay pre-petition arrears from the proceeds of the sale of one of his properties.[49]  The disclosure statement did not identify a buyer, a closing date or other relevant details of a pending sale.[50]  As a result, the sale was nothing more than wishful thinking.  *See In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. E.D.N.Y.

---

[47] Dec. 2012 monthly operating report ("MOR") at 6, Bankr. Docket (Doc. No. 177) (R. 69); Schedule J, Bankr. Docket (Doc. No. 18) (R. 83).

[48] *See* Am. Disclosure Statement at 6-7, Bankr. Docket (Doc. No. 178) (R. 70).

[49] *See* Am. Plan of Reorganization at 12, Bankr. Docket (Doc. No. 178) (R. 70).

[50] *See id.*

1988) (declining to approve disclosure statement where sale of property was speculative). This failure served as an additional ground for cause to dismiss. *See In re Babayoff*, 445 B.R. 64, 78 (Bankr. E.D.N.Y. 2011).

*Cause Under § 1112(b)(4)(A)*

The Bankruptcy Court did not err in finding that there was a continuing loss to or diminution of Alston's estate and that there was no likelihood of rehabilitation, constituting grounds for dismissal under section 1112(b)(4)(A). Alston's monthly operating reports disclose that he was operating at a deficit of approximately $2,000 in December alone and over $31,000 during the first six months his bankruptcy case was pending.[51] The escalating deficit resulted in a continuing loss to the estate. *See In re Fall*, 405 B.R. 863, 867 (Bankr. N.D. Ohio 2009) (continuing loss satisfied where debtor repeatedly incurs losses), *aff'd sub nom. Fall v. Farmers & Merchants State Bank*, No. 08-3012, 2009 WL 974538 (N.D. Ohio Apr. 9, 2009); *In re Halal 4 U LLC*, No. 08-15216, 2010 WL 3810860, at *4 (Bankr. S.D.N.Y. 2010) (debtor's inability to satisfy basic operating expenses indicated continuing loss).

Alston counters that the cash receipts and disbursements sheet from his December operating report shows a net cash flow of over $2,000.[52] The cash flow statement only reveals the generation of cash. The operations report, on the other hand, presents a clearer picture of the estate's financial health. It discloses whether the debtor realized a profit or suffered a loss. Here, it revealed a cumulative $31,000 loss.[53] Thus, the cash receipts and disbursements sheet does not militate against the

---

[51] *See, e.g.,* Dec. 2012 MOR at 6, Bankr. Docket (Doc. No. 177) (R. 69).

[52] Appellant Br. at 21.

[53] Dec. 2012 MOR at 6, Bankr. Docket (Doc. No. 177) (R. 69).

Bankruptcy Court's conclusion that Alston's estate suffered diminution of its assets and was sustaining continuing losses.

The mounting losses, Alston's status as an unemployed full-time student with $31,000 in educational loans, and his failure to timely pay his secured creditors support the finding that rehabilitation was not likely in the near future. Alston's estate was not amenable to rehabilitation because he could not satisfy his financial obligations. *See In re Northeast Family Eyecare, P.C.*, No. 01-13983, 2002 WL 1836307, at *3 (Bankr. E.D. Pa. July 22, 2002) ("Rehabilitation signifies that the debtor will be reestablished on a second [*sic*] financial basis, which implies establishing a cash flow from which current obligations can be met") (quoting *In re Rundlett*, 136 B.R. 376, 380 (Bankr. S.D.N.Y. 1992)). At the time Alston's case was dismissed, three of his secured creditors had already received relief from the automatic stay.[54]

Citibank received relief because Alston failed to pay it nearly $6,000 in mortgage payments due after he filed for bankruptcy. Bayview was granted relief because Alston failed to make post-petition mortgage payments of over $14,000 on one property and $5,000 on another property. Household Finance obtained relief because Alston failed to pay his mortgage payments.[55]

---

[54] Alston claims that the Bankruptcy Court abused its discretion when it entered orders granting Citibank and Household Finance relief from section 362's automatic stay. Appellant Br. at 36, 41. Those orders are not on appeal. *See* Notice of Appeal, Bankr. Docket (Doc. No. 196) (R.1). Therefore, we decline to address Alston's challenge to them.

[55] *See* Hr'g Tr. at 3:16-22 (Oct. 10, 2012) (R. 73); Citibank Mot. for Relief at 2, Bankr. Docket (Doc. No. 57) (R. 18); Order Granting Citibank Mot. for Relief, Bankr. Docket (Doc. No. 72) (Oct. 17, 2012) (R. 25); Bayview Mots. for Relief at 2, Bankr. Docket (Doc. Nos. 77, 79) (R. 26, 27); Orders Granting Bayview Mots. for Relief, Bankr. Docket (Doc. Nos. 156, 157) (Jan. 10, 2013) (R. 62, 63); Household Finance Mot. for Relief at 1-2, Bankr. Docket (Doc. No. 138) (R. 54); Order Granting Household Finance Mot. for Relief, Bankr. Docket (Doc. No. 175) (Feb. 6, 2013) (R. 68).

Each day that the bankruptcy case remained open, the creditors' rights were impaired.  There was nothing more than Alston's speculation that given time he could pay his creditors.  Thus, the Bankruptcy Court's conclusion that the continuing losses diminished the estate and there was no likelihood of rehabilitation is supported by the record.

<em>Cause Under § 1112(b)(4)(B)</em>

Alston, as the Bankruptcy Court properly concluded, grossly mismanaged his bankruptcy estate.  To support himself as a full-time student, he took out educational loans outside the ordinary course of business without court approval.  *See In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 566 (Bankr. M.D. Pa. 2007) (finding that entering into unauthorized borrowings with oral terms amounted to gross mismanagement).  To determine whether a transaction is in the ordinary course of business, a court must engage in a two-step inquiry.  First, it must decide whether the transaction is of the type in which others in the debtor's business would engage.  Second, it determines whether the debtor's creditors would reasonably expect him to enter into the transaction at issue.  *In re Roth Am., Inc.*, 975 F.2d 949, 953 (3d Cir. 1992); *In re RJC Indus., Inc.*, 369 B.R. 845, 851 (Bankr. M.D. Pa. 2006).

Alston's argument that his educational loans were ordinary for a full-time student does not affect the Bankruptcy Court's finding that he mismanaged his estate.  The debtor's pre-petition business is typically considered when deciding if a transaction was ordinary.  *In re Roth Am., Inc.*, 975 F.2d at 953; *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 797 (Bankr. D. Del. 2007); *In re Pennsylvania Gear Corp.*, No. 02-36436, 2008 WL 2370169, at *7 (Bankr. E.D. Pa. Apr. 22, 2008).  Before filing for bankruptcy,

Alston was a landlord and the operator of a number of consumer services businesses. He was not attending school full-time.[56]  His creditors would not anticipate his incurring $31,000 in educational loans.  Nor are educational loans part of the normal business of landlords and business managers.  Incurring substantial educational loans outside the ordinary course of business demonstrated gross mismanagement of the estate.  *See In re Gateway Access*, 374 B.R. at 566.

Paying his former attorney without approval is another indicia of mismanagement.  Alston's claim that the payments represent the "clearest evidence" that he has taken "great care" of his estate reveals a fundamental misunderstanding of his obligation to the Bankruptcy Court and his creditors.[57]  He has demonstrated an inability to manage the estate.  *In re Domiano*, 442 B.R. 97, 107 (Bankr. M.D. Pa. 2010) (debtor's payment to counsel without court approval evidenced gross mismanagement).  Alston's gross mismanagement of the Bankruptcy estate supplied cause to dismiss pursuant to Bankruptcy Code section 1112(b)(4)(B).

### Cause Under § 1112(b)(4)(D)

Alston's attorney conceded that Alston was using his creditors' cash collateral to pay operating and living expenses, and to satisfy debts on his properties.[58]  Alston argues that he was authorized to use the cash collateral by the "respective notes and patterns of usage."[59]  Alston knew he could not use cash collateral without approval.

---

[56] *See* Am. Disclosure Statement at 6-7, Bankr. Docket (Doc. No. 178) (R. 70).

[57] Appellant Br. at 30.

[58] *See* Hr'g Tr. at 5:21-25-6:1-2; 9:8-11 (Jan. 9, 2013) (R. 75).

[59] Appellant Br. at 30.

Nearly six months after filing for bankruptcy, he filed a motion to use cash collateral.[60] At the time it postponed its decision on the motion, the Bankruptcy Court commented that it was not disposed to grant Alston's motion because it did not include enough detail about how he would use his creditors' cash collateral.[61]

Despite this warning, Alston used rental income to pay administrative expenses, pre-petition debts, and living expenses.[62] His unauthorized use of cash collateral to support himself as a full-time student substantially harmed his secured creditors. He used their cash collateral over a six-month period without authorization and while failing to make full post-petition mortgage payments to at least three of his secured creditors. One cannot question that his actions substantially harmed his creditors' interests. Thus, the Bankruptcy Court properly found that Alston had used cash collateral substantially harmful to at least one creditor without court or creditor approval, supplying cause for dismissal under Bankruptcy Code section 1112(b)(4)(D). *See* 11 U.S.C. § 363(c)(2) (court must approve or creditor with interest must consent to debtor's use of cash collateral).

### *Cause Under § 1112(b)(4)(E)*

The Bankruptcy Court found that Alston had violated its October 23, 2012 Order and section 331 of the Bankruptcy Code when he paid his former attorney without court

---

[60] *See* Mot. to Use Cash Collateral, Bankr. Docket (Doc. No. 127) (R. 51).

[61] Hr'g Tr. at 7:7-24, 9:3-14 (Jan. 9, 2013) (R. 75). The Bankruptcy Court dismissed Alston's case before making a final decision on the Motion to Use Cash Collateral.

[62] *See* Mot. to Use Cash Collateral at 2-3, Bankr. Docket (Doc. No. 127) (R. 51); Hr'g Tr. at 5:21-25-6:1-2 (Jan. 9, 2013) (R. 75).

approval.  *See* 11 U.S.C. § 331.[63]  The record shows that Alston did not obtain approval from the Bankruptcy Court before he paid his former counsel, and that he submitted monthly operating reports showing that, despite the lack of a court order, he paid his former counsel, on four separate occasions, fees totaling $9,000.[64]

Alston does not dispute that he made the payments.  Instead, he argues that it was not his, but rather his former attorney's, obligation to apply to the Bankruptcy Court for payment.[65]  Although section 331 provides that the debtor's attorney must apply to receive compensation from the estate, the Bankruptcy Court's October 23 Order put Alston, a law student, on notice that he could not pay his lawyer absent a court order.

Alston asserts that there was no evidence that he acted willfully.[66]  Contrary to his contention, the Bankruptcy Court did not need to make a finding of willfulness.  Willfulness is not necessary to a finding of cause.  *See In re Babayoff*, 445 B.R. at 80 ("Section 1112(b)(4)(E) does not require that the debtor's failure to comply be willful, or the product of bad faith or fraud").  Thus, the Bankruptcy Court did not err in finding that Alston's failure to comply with its order constituted cause to dismiss the case under section 1112(b)(4)(E).

### Cause Under § 1112(b)(4)(F)

As the Bankruptcy Court found, Alston repeatedly filed his monthly operating reports late.  Alston claims that no monthly operating reports were late at the time of the

---

[63] *See also* Order, Bankr. Docket (Doc. No. 84) (R. 30).  The October 23 order was entered on October 24, 2012.

[64] *See, e.g.,* Dec. 2012 MOR at 5, Bankr. Docket (Doc. No. 177) (R. 69).

[65] *See* Appellant Br. at 30-31.

[66] Appellant Br. at 31.

February hearing.[67]   However, as his former attorney conceded, Alston had filed documents late throughout the pendency of his case.   *See* Hr'g Tr. at 4:1-5 (Feb. 20, 2013) (R. 77) (Counsel for Alston: "I do understand that the debtor has been persistently been [*sic*] if not late, certainly the [*sic*] 11th hour in producing all the information that the Court requires and that other parties in interest are entitled to").   The monthly operating reports for August and September were not filed until November 14, 2012.[68]   The December report was not filed until February 18, 2013.[69]   *See In re Grasso*, 490 B.R. 500, 520 n.15 (Bankr. E.D. Pa. 2013) (observing that timely filing monthly operating reports is "one of the most fundamental and crucial duties of a debtor-in-possession.") (citing *In re Savino Oil & Heating Co., Inc.,* 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989)). Further, Alston did not file his amended disclosure statement and proposed plan until nine p.m. on the night before the February hearing.[70]   Coupled with his other failings, Alston's untimely filings provided cause for dismissal under section 1112(b)(4)(F).   *In re Berkman*, No. 09-17860, 2010 WL 891690, at *3 n.7 (Bankr. E.D. Pa. Mar. 15, 2010).

### *Unusual Circumstances Were Not Present*

Once the Bankruptcy Court found cause under section 1112(b), the burden shifted to Alston to show that "unusual circumstances" existed to avoid dismissal and that there was a reasonable likelihood that a plan would be confirmed.   *In re Grasso*,

---

[67] Appellant Br. at 32.

[68] Bankr. Docket (Doc. Nos. 106, 107) (R. 40, 41).   An initial version of the August 2012 MOR was filed on November 9, 2012.  Bankr. Docket, (Doc. No. 96) (R. 35).

[69] Bankr. Docket (Doc. No. 177) (R. 69).

[70] Hr'g Tr. at 5:1-9 (Feb. 20, 2013) (R. 77).

497 B.R. at 455; *In re Domiano*, 442 B.R. at 107; *In re Kholyavka*, No. 08-10653, 2008 WL 3887653, at *3 (Bankr. E.D. Pa. Aug. 20, 2008).

Alston did not present any evidence of unusual circumstances.  He failed to appear at the hearing on the UST's motion to dismiss his case.  Alston argues, however, that he could have presented evidence of a confirmable plan if the Bankruptcy Court had not excluded an affidavit he filed the night before the hearing.[71]  Stated differently, he contends that excluding the affidavit effectively precluded him from presenting a confirmable plan.

The Bankruptcy Court did not abuse its discretion in not admitting Alston's eleventh-hour affidavit because he was not available for cross-examination.  Nevertheless, even if the affidavit had been admitted, it would not have saved Alston's case.  It did not provide a prescription for rehabilitation.

The Bankruptcy Court excluded the affidavit because Alston was not available for cross-examination.  Given the importance of his statements to the continuing viability of his Chapter 11 case, and the fact that one secured creditor stated at the hearing that it had not agreed to the treatment Alston claimed it had in the affidavit, it was not an abuse of discretion to exclude the affidavit.  *See In re Olick*, 311 Fed. App'x 529, 532 n.5 (3d Cir. 2008) (non-precedential) (observing that Bankruptcy Court was authorized by Fed. R. Civ. P. 43 to exclude affidavit where affiant was not available for cross-examination).

---

[71] Appellant Br. at 15.

### *Best Interest of Creditors*

Having found several grounds for cause and no unusual circumstances, the Bankruptcy Court was required to either convert or dismiss Alston's case. *DCNC N. Carolina I*, 2009 WL 3209728, at *4, *6; 11 U.S.C. § 1112(b)(1). Dismissal, rather than conversion, served Alston's creditors' best interests. The UST favored dismissal because "there [was] no equity in [Alston's] properties,"[72] a fact borne out by Alston's Schedule A.[73] Thus, liquidating Alston's assets in the case of conversion would not have been beneficial to Alston's secured and unsecured creditors.

Alston himself recognized that if his case were converted to Chapter 7, there would be no funds available to his unsecured creditors.[74] The lack of significant equity in the bankruptcy estate demonstrated that dismissal, rather than conversion, was in the best interest of Alston's creditors. *See In re Northeast*, 2002 WL 1836307, at *6 (dismissing case instead of converting it where debtor's estate did not include unencumbered assets that could be liquidated to benefit creditors); *In re Fall*, 405 B.R. at 871 (concluding that dismissal was proper where no substantial equity existed in debtor's estate).

That three of Alston's secured creditors moved for relief from the automatic stay suggests that they did not believe his Chapter 11 case could succeed. None of Alston's creditors filed objections to the motion to dismiss, nor did the two creditors present at

---

[72] Hr'g Tr. at 24: 16-18 (Feb. 20, 2013) (R. 77).

[73] *See* Bankr. Docket (Doc. No. 18) (R. 83). Schedule A reveals that seven of Alston's nine properties had no equity. The remaining two properties, located at 2825 West Girard Avenue and 3029-31 West Glenwood Avenue had $10,000 and $9,800 worth of equity, respectively. The West Girard Avenue property, however, had a judicial lien of $4,000. *See* Schedule D, Bankr. Docket (Doc. No. 18) (R. 83).

[74] Am. Disclosure Statement at 34, Bankr. Docket (Doc. No. 178) (R. 70).

the hearing advocate for conversion instead of dismissal.   The Bankruptcy Court's decision to dismiss, rather than convert, Alston's Chapter 11 case was not an abuse of discretion.

### Ineffective Assistance of Counsel

In a bankruptcy action, as in other civil actions, parties are not entitled to relief based on a claim of ineffective assistance of counsel.  *Kushner v. Winterthur Swiss Ins. Co.*, 620 F.2d 404, 408 (3d Cir. 1980) (in civil cases, there is no constitutional right to effective assistance of counsel) (citing *Dilliplaine v. Lehigh Valley Trust Co.*, 322 A.2d 114, 117-18 (Pa. 1974)); *Miles v. Aramark Corr. Serv., Inc.*, 321 Fed. App'x 188, 192 (3d Cir. 2009) (*per curiam*) (non-precedential).  Alston hinges his ineffective assistance of counsel argument on Fed. R. Civ. P. 60(b), contending that the rule allows this Court to vacate the Bankruptcy Court's February 25 Order.[75]  Aside from the fact that Alston has made no motion pursuant to Rule 60(b), Rule 60(b) relief is not available based on a claim on ineffective assistance of counsel in a bankruptcy action.  *See In re Taylor*, 357 B.R. 360, 366 (Bankr. W.D. Pa. 2006) (citing *Mayfield v. Vanguard Savings & Loan Assoc.*, No. 88-0410, 1989 WL 106986, at *2 (E.D. Pa. 1989)).  Even if we could consider Alston's argument concerning his counsel's alleged ineffectiveness, it would not change our conclusion that the Bankruptcy Court did not abuse its discretion in dismissing his case for cause.

---

[75] Appellant Br. at 52-53.

**Judgment in Favor of the UST**

Alston claims that the Bankruptcy Court abused its discretion by awarding the UST $1,300 for unpaid quarterly fees.[76]  The UST concedes that Alston paid quarterly fees totaling $650 for the last quarter of 2012.[77]  Therefore, we shall remand to the Bankruptcy Court for the limited purpose of amending the money judgment after determining the amount of fees, if any, Alston owes to the UST.[78]

**Conclusion**

The Bankruptcy Court did not abuse its discretion in dismissing Alston's Chapter 11 case for cause.  Even if one of the grounds under section 1112(b) alone was not sufficient to warrant dismissal, together they were.  Therefore, we shall affirm the Bankruptcy Court's dismissal of Alston's Chapter 11 case for cause and remand for a determination of the fees, if any, owed to the UST.

---

[76] Appellant Br. at 46.

[77] Appellee Br. at 36.

[78] Alston's remaining arguments lack merit.  He accuses the Bankruptcy Court of erring in not *sua sponte* transferring his action to Florida where he was attending law school.  Appellant Br. at 46, 48. Alston also blames his former attorney and the UST for not moving to transfer his case.  He contends that venue would be proper in Florida, but does not explain why he elected to file his case here as opposed to pursuing it in Florida.  The Bankruptcy Court was not required to transfer Alston's case despite its knowledge that he was attending law school in Florida.

Contrary to Alston's assertion, the UST's motion to dismiss for cause was not moot when the Bankruptcy Court dismissed his case.  Appellant Br. at 33-36.  Alston claims that there was no basis for the UST's claims that he (1) failed to use a debtor-in-possession bank account; (2) did not file his monthly operating reports in a timely manner; (3) did not satisfy post-petition financial obligations; and (4) that his conduct showed his inability to effectuate a reorganization plan and a continuing loss to the bankruptcy estate.  *Id.*  Alston's mootness argument is unavailing.  The Bankruptcy Court did not make any finding concerning Alston's use of a debtor-in-possession account.  As we have discussed, the record supports the Bankruptcy Court's findings that cause existed.

We find no evidence, as Alston claims, that the UST failed to adequately perform her duties. Appellant Br. at 45.  To the contrary, the UST's duty to ensure that bankruptcy actions are in compliance with the applicable rules was satisfied when she filed a motion to dismiss or convert Alston's Chapter 11 case due to his numerous failures to comply with his obligations under the Bankruptcy Code.  *See In re Columbia Gas Sys., Inc.*, 33 F.3d 294, 296 (3d Cir. 1994), *superseded by statute on other grounds*.